2003-NMCA-013

62 P.3d 283

**Dulces SEGURA, Plaintiff–Appellee,**

v.

**K–MART CORPORATION,
Defendant–Appellant.**

**No. 21,781.**

Court of Appeals of New Mexico.

June 28, 2002.

**194**

Tandy Hunt, Randy K. Clark, Roswell, NM, for Appellee.

Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, for Appellant.

*OPINION*

FRY, Judge.

{1} Defendant K–Mart appeals from a jury verdict awarding damages to Plaintiff Dulces Segura as compensation for an accident in which Segura slipped and fell in a K–Mart store. We consider the propriety of the trial court's sanction for spoliation of evidence and its order precluding K–Mart from asserting as a defense the liability of a third party. We affirm the spoliation sanction and reverse on the issue of third-party liability.

**BACKGROUND**

{2} Segura slipped and fell while shopping in the automotive department of a K–Mart store in Artesia, New Mexico and suffered injuries to his back, shoulder, and knee. Shortly before the accident, another K–Mart customer, Delbert Keck, was shopping in the automotive area. Keck took a plastic container of STP product off a shelf. The container leaked fluid onto the floor. Keck testified that he saw Segura walking toward the puddle of fluid and attempted to steer him around the hazard with hand gestures, but Segura either did not see Keck or ignored him, walked into the fluid, and fell. Segura testified that Keck did not warn him about the spill.

{3} Segura asked K–Mart to produce the container in question, but K–Mart could not locate it. Segura filed a motion for sanctions, and the trial court ruled that K–Mart knew or should have known that the container should be preserved as evidence. As a sanction for its failure to preserve the container, the court ruled that K–Mart would be deemed negligent and its negligence would be considered a proximate cause of Segura's injuries.

{4} Segura also filed a motion for partial summary judgment on the issue of Keck's potential third-party liability for Segura's injuries. Segura argued that K–Mart should not be permitted to attribute any liability to Keck because K–Mart had failed in the course of discovery to provide Segura with any facts suggesting that Keck had been negligent. K–Mart responded that Segura and other witnesses testified that Keck did not warn Segura about the fluid that had leaked from the STP bottle Keck had been examining. The trial court granted Segura's motion and prohibited K–Mart "from claiming any [third] party is at fault or a cause of the fall and injuries to . . . Segura".

**DISCUSSION**

**The Spoliation Sanction**

{5} The parties do not dispute that the fluid on which Segura slipped had leaked from a hole or slit in the STP bottle examined by Keck just prior to Segura's fall. Keck described the plastic container as having a hole or cut in its side. K–Mart's loss control manager for the Artesia store, who went to the scene of Segura's fall, testified that she saw the container at the scene and that there was a break in the seam on the side of the container.

{6} When Segura asked K–Mart to produce the STP container that had leaked the fluid, K–Mart responded that its former store manager had taken possession of the container after the accident, but that K–Mart no longer had the container or knew where it was. Moreover, K–Mart did not know the whereabouts of the former store manager.

{7} Segura filed a motion for sanctions against K–Mart for losing the STP container. At the conclusion of the motion hearing, the

trial court stated that the K–Mart manager must have taken the container either with the intention of hiding it from Segura or to preserve it as evidence, and that "either way, it's gone now." As a sanction, the court ruled it would instruct the jury that K–Mart was negligent and that its negligence was a proximate cause of Segura's fall.

{8} K–Mart argues the trial court erred in determining liability against it as a sanction for its loss of the container because, given the relatively minor prejudice to Segura, the court should have imposed a lesser sanction. We review the imposition of sanctions for spoliation—the loss or destruction of evidence—for abuse of discretion. *See Rest. Mgmt. Co. v. Kidde–Fenwal, Inc.,* 1999–NMCA–101, ¶ 8, 127 N.M. 708, 986 P.2d 504.

{9} In *Restaurant Management Co.,* we held that, in determining whether to impose sanctions for the destruction of evidence, courts should consider the following:

(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."

Id. ¶ 13 (citation and internal quotation marks omitted).

{10} With respect to degree of fault, K–Mart argues the trial court found that it was merely negligent, and thus, such a severe sanction was improper. While K–Mart is correct that the trial court found it "knew or should have known that it was important to keep the container," K–Mart's degree of culpability is only one of the factors the court weighed in evaluating spoliation sanctions. In addition, the negligent care of evidence may have consequences as deleterious as the intentional destruction of evidence. As noted in *Thomas v. Isle of Capri Casino,* 1999–SA–01476–SCT, ¶ 40, 781 So.2d 125 (Miss.2001), "[r]equiring an innocent litigant to prove fraudulent intent on the part of the spoliator would result in placing too onerous a burden on the aggrieved party." The Mississippi court explained that "[t]o hold otherwise would encourage parties with weak cases to 'inadvertently' lose particularly damning evidence and then manufacture 'innocent' explanations for the loss." *Id.* Thus, in some cases, the prejudice to the victim of spoliation may weigh more heavily than the spoliator's degree of fault in determining an appropriate sanction.

{11} K–Mart argues that the second *Restaurant Management Co.* factor—the prejudice to Segura—also militates against the severe sanction imposed by the trial court. Segura claimed below that analysis of the container could have indicated whether the hole or split was attributable to K–Mart or the manufacturer of the container or both. On appeal, K–Mart argues that Segura could have established the manufacturer's liability through other means and that any inability to attribute fault to the manufacturer prejudiced both Segura and K–Mart. We disagree. Even if Segura sought only to prove K–Mart's negligence and not the manufacturer's liability, the absence of the container left Segura bereft of evidence to prove that it was K–Mart's handling of the container that caused the hole. Without the container, it was equally likely that the hole resulted from a manufacturing defect or from mishandling. Although K–Mart contends the source of the hole could be determined from the testimony of Keck and K–Mart's loss control manager who both described the hole, this testimony provided no particulars tending to show one source of damage was more likely than the other.

{12} K–Mart further maintains that Segura had an alternative theory of liability against K–Mart that did not depend on determining the origin of the hole in the container because Segura presented testimony suggesting that K–Mart should have anticipated spills in the automotive department and used non-slip floor mats in that area. We are not persuaded. As the trial court noted, the disappearance of the container "has to some degree limited the liability theories [Segura] can pursue." Assuming that Segura had two theories against K–Mart—one based on responsibility for the hole and one based on the failure to use non-slip

mats—the elimination of one theory could reasonably be viewed as substantial prejudice.

{13} With respect to the third factor in determining spoliation sanctions, K–Mart argues the trial court could have imposed a lesser sanction and achieved the same result. It argues that a more appropriate sanction would have been a "spoliation inference," which is an instruction to the jury permitting, but not requiring, the jury to infer that the missing evidence would have been unfavorable to the spoliating party. *See Rest. Mgmt. Co.*, 1999–NMCA–101, ¶ 18, 127 N.M. 708, 986 P.2d 504. We disagree with K–Mart that the trial court's failure to employ a spoliation inference constitutes an abuse of discretion. A spoliation inference would have permitted K–Mart great latitude in arguing to the jury that the hole in the container was more likely the result of a manufacturing defect, and a jury could decide not to infer that K–Mart was responsible. Because Segura's only means for rebutting the theory of a manufacturing defect was the container itself, we cannot say that the trial court unreasonably found a stricter sanction to be warranted. Moreover, the sanction imposed was not the most severe available; the most onerous sanction for K–Mart would have been a default judgment of 100% liability. In the context of the sanction actually imposed, K–Mart was free to argue Segura's comparative fault. Given the prejudice to Segura resulting from the container's loss, we hold the trial court exercised sound judicial discretion in imposing the spoliation sanction.

**The Third–Party Liability of Keck**

{14} K–Mart contends the trial court erroneously granted Segura partial summary judgment in ruling that K–Mart could not raise as a defense the comparative fault of Keck. Segura counters that K–Mart did not clearly raise Keck's potential liability below, that it abandoned the defense at the motion hearings, and that it failed to meet its burden in overcoming Segura's prima facie showing on the issue of third-party liability. Based on our review of the record, we agree with K–Mart and reverse.

{15} Before we address the parties' specific arguments, we note that the trial court held two hearings addressing the third-party liability issue. At the first hearing on April 13, 2000, the court and the parties focused on the spoliation issue. When the third-party issue briefly came up, the court indicated that it wanted K–Mart to provide some authority for the notion that Keck owed a duty to Segura. The court gave K–Mart one week to present its case law. Prior to the second hearing, K–Mart filed its supplemental response in which it fleshed out its theories of liability against Keck and cited New Mexico law on the issue of Keck's duty. At the second hearing, the trial court immediately presented its view of Keck's potential liability, engaged in a brief dialogue with counsel, and announced its ruling.

{16} We are not persuaded by Segura's argument that K–Mart's procedural missteps support the trial court's ruling. Segura argues that K–Mart's discovery responses failed to provide a factual basis for the assertion that Keck was in some way responsible for Segura's injuries. As a result, Segura contends he would have been unfairly prejudiced if, at trial, K–Mart had sought to attribute some fault to Keck pursuant to *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct.App.1982). However, the record shows that K–Mart identified Keck as a potentially negligent participant early in the course of discovery. It is true K–Mart's initial response to the motion for summary judgment mentioned only one theory of Keck's liability—that he had caused the automotive fluid to spill on the floor. However, before the second hearing on the issue, K–Mart filed a supplemental response in which it emphasized a second theory of liability against Keck—that Keck failed to warn Segura of the danger created by the spilled fluid. K–Mart noted that Segura testified at his deposition that no one warned him of the hazard, and Segura's son and grandson, who were with Segura at the time, both testified that no one warned about the spill. Thus, K–Mart argued, because a person who creates a dangerous condition has a duty to exercise ordinary care with respect to foreseeable plaintiffs, the jury could find Keck liable for some proportion of Segura's

damages if the jury believed Segura's own testimony.

**▊** {17} In our view, K–Mart's pleadings clearly raised the issue of Keck's potential liability, and its supplemental response to Segura's motion for partial summary judgment squarely presented the issue to be decided by the trial court. In addition, K–Mart's supplemental response provided a factual basis sufficient to overcome Segura's prima facie showing that Keck was in no way responsible for the accident or its aftermath. By the time the trial court held its second hearing on the motion, the pleadings had alerted the court that it must decide whether Keck's failure to warn, as alleged in deposition testimony by three witnesses, could be included in the jury's assessment of relative fault.

**▊** {18} Segura further contends that at the two hearings K–Mart abandoned its view that Keck was in some way responsible for Segura's injuries because K–Mart's attorney repeatedly told the trial court he did not believe Keck did anything wrong. At the first hearing, K–Mart's attorney, Thomas Perkins, noted that a different attorney would be K–Mart's counsel at trial, but that if Perkins were to try the case he might not stress Keck's negligence in any way. However, Perkins also specifically stated that K–Mart had to be able to respond to evidence of Keck's negligence.

{19} At the second hearing, before seeking any argument from counsel, the trial court ruminated on the question of Keck's duty to Segura and stated, "I can't make a decision without seeing more testimony than I presently have, I don't think." The court and Segura's counsel then engaged in a dialogue regarding whether Segura could join Keck as a defendant. The court observed that Segura's counsel might have a Rule 1–011 NMRA 2002 problem in joining Keck because Segura's counsel did not think Keck owed Segura a duty. The court then mentioned the difficulty inherent in the dispute over whether Keck did or did not warn Segura. The court noted that if Segura testified that no one warned him, then K–Mart would want to be able to rebut that testimony with Keck's testimony. Segura's counsel stated he had

no problem with K–Mart using Keck's testimony to argue that Segura was negligent in failing to heed Keck's warning; rather, Segura's counsel wanted to keep Keck's name off the jury's special verdict form. The court concluded that if K–Mart wished to attribute fault to Keck, K–Mart would have to join Keck as a party; if it chose not to join Keck, it could not employ "an empty chair *Bartlett* theory" and argue that some portion of Segura's damages were the result of Keck's negligence. At this point, K–Mart's counsel protested that "the irony of this is that that's not our position. Our position is that he did everything that he could do once the fluid spilled. What we don't want to get into is the situation at trial where we can't make any kind of argument in closing after they have made the argument, 'well, he never warned.' " The court assured K–Mart's counsel that it could use Keck in any way to attribute fault to Segura, "but I don't want a *Bartlett* defense."

{20} We disagree with Segura's contention that defense counsel's comments in the context of the second hearing constituted abandonment of K–Mart's third-party liability defense. First, the only authority Segura cites in support of its abandonment argument is not persuasive. *Snyders v. Hale,* 89 N.M. 734, 734–35, 557 P.2d 583, 583–84 (Ct.App. 1976), dealt with express stipulations made at trial, a far cry from the give-and-take colloquy that occurred at the second motion hearing in this case. Second, prior to the second hearing, K–Mart made it very clear in its written pleadings that it sought to argue Keck's liability for failing to warn Segura if he and his two relatives continued to testify at trial that Keck did not warn. There was no need for K–Mart to reiterate that argument at the hearing. *See Harbison v. Johnston,* 2001–NMCA–051, ¶ 7, 130 N.M. 595, 28 P.3d 1136 (explaining that preservation requirement serves to alert the trial court to error and to give the opposing party the chance to meet the argument). K–Mart's counsel's remarks at the second hearing were made in response to the court's ruling eliminating K–Mart's third-party liability theory; counsel was trying to ensure that at least one

defense theory—that Segura negligently ignored Keck's warning—remained viable.

{21} K–Mart argues that the trial court's elimination of its *Bartlett* defense rested on its erroneous determination that Keck owed no duty to Segura. It is not at all clear to us that the trial court made such a determination. At the second hearing, the court mentioned various theories under which the law might impose a duty on Keck. The court commented, "I'm not sure what his duty is," and concluded, "I can't solve this for you ... until I see and hear what the testimony is." However, even if the court did base its rejection of K–Mart's *Bartlett* defense on a legal determination that Keck owed no duty to Segura, we hold such a determination to be error.

{22} In determining if a duty is owed, "[t]he ultimate question is whether the law should give recognition and effect to an obligation from one person to another." *Gabaldon v. Erisa Mortgage Co.*, 1997–NMCA–120, ¶ 21, 124 N.M. 296, 949 P.2d 1193, *rev'd on other grounds*, 1999–NMSC–039, 128 N.M. 84, 990 P.2d 197. This legal question is a policy determination guided by "consideration [of] the relationship of the parties, [Segura's] injured interests, Defendant's conduct in light of those interests, and other principles comprising the law." *Madrid v. Lincoln County Med. Ctr.*, 121 N.M. 133, 141, 909 P.2d 14, 22 (Ct.App.1995).

{23} One who creates a dangerous condition has a duty reasonably to warn others of that danger. Restatement (Second) of Torts § 321 (1965) (stating that if an actor does something he realizes "has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect"). In light of the differing testimony about Keck's actions anticipated at trial, it was foreseeable that the jury could decide one of at least three ways. The jury might decide that Keck properly warned Segura about the risk posed by the spilled fluid, leading to the possibility that Segura may have been comparatively negligent for not heeding Keck's warning. Or, the jury might decide that Keck did not spill the fluid and thus had no duty to warn. Or, as a third

possibility, the jury could decide that Keck did spill the fluid and acted unreasonably in not warning Segura. In the latter event, the jury could reasonably decide to hold Keck partially at fault for Segura's injuries. If that occurred, K–Mart would then be entitled to a *Bartlett* defense and a *Bartlett* "empty chair" instruction on percentages of comparative fault.

{24} In light of anticipated testimony that might justify a *Bartlett* defense and a *Bartlett* instruction, the court committed error when it rejected that theory before trial and refused to allow K-mart to propose such a theory to the jury in a special verdict. The court also erred when it ordered that K–Mart could not assert Keck's third-party comparative fault unless it joined Keck as a party. *See Wilson v. Gillis*, 105 N.M. 259, 261, 731 P.2d 955, 957 (Ct.App.1986) ("The question implicitly raised by this appeal is whether ... [a] defendant must raise the *Bartlett* defense by impleading non-parties who may be liable for all or a portion of [the] plaintiff's claim. The answer to this question is no."). Accordingly, we reverse and remand for a new trial in which K–Mart may pursue its *Bartlett* defense to its logical conclusion consistent with the evidence.

### Admission of the Medical Bills

{25} K–Mart argues that the trial court erroneously allowed the jury to consider hearsay evidence in determining Segura's medical expenses. Segura first called his treating physician, Dr. Pennington, who testified from a summary of Segura's medical bills. Over K–Mart's objection, Dr. Pennington opined that all the bills were necessitated by Segura's fall and resulting injuries and that the amounts were reasonable. Segura himself then testified that he had received the various medical bills, again over K–Mart's objection. Most of the medical bills were not identified or admitted by way of the testimony of the treating medical provider.

{26} It is clear that the amounts billed by the medical treatment providers were offered for their truth and therefore constituted hearsay because Segura relied on them in establishing his damages. *See Pa-*

*dilla v. Hay,* 120 N.M. 220, 222, 900 P.2d 969, 971 (Ct.App.1995) (explaining that medical bills were offered for the truth of the amounts stated in them because the plaintiff complained that damages awarded did not include medical bills excluded from evidence). As we clarified in *Padilla,* a plaintiff seeking admission of medical bills must not only establish through expert testimony that medical bills are reasonable and related to the claimed injuries; the plaintiff must also lay a foundation establishing an exception to the hearsay rule. *Id.* This is usually accomplished by laying a foundation for admitting medical bills as records of regularly conducted activity under NMRA 11–803(F). *See Padilla,* 120 N.M. at 223, 900 P.2d at 972. Here, Segura did not provide this predicate.

**Evidence of Former Store Manager's Bias**

{27} K–Mart argues that if we order a new trial, it should be allowed to cross-examine its former store manager about the fact that he was terminated on suspicion of theft. When K–Mart sought to question the witness on this subject, the trial court considered this to be in the nature of character evidence governed by Rule 11–608 NMRA 2002. Therefore, the court ruled that K–Mart could ask the witness about his termination but it would be bound by the witness's answer. K–Mart then asked the witness if he had been given the option of resigning or being terminated from employment, and he said that he had not. The court reiterated its ruling that K–Mart could probe no further.

{28} We agree with K–Mart that Rule 11–608 would not preclude inquiry into the circumstances of the witness's termination in order to show the witness's character for untruthfulness. The rule specifically allows this. *See* Rule 11–608(B)(1); *see also State v. Wyman,* 96 N.M. 558, 560, 632 P.2d 1196, 1198 (Ct.App.1981) (explaining that questions concerning acts of dishonesty such as embezzlement or theft are probative of truthfulness and proper subject of cross-examination). However, even though such evidence may be relevant, its admissibility is left to the sound discretion of the trial court. *See* Rule 11–608(B) (stating that specific instances of a witness's conduct "may ... in

the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness"). We therefore decline K–Mart's invitation to instruct the trial court how to rule on this evidence on remand.

**CONCLUSION**

{29} We reverse the trial court's order precluding K–Mart from arguing third-party comparative fault and remand for a new trial. We affirm the court's spoliation sanction and hold that the same sanction should apply on remand.

{30} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and JAMES J. WECHSLER, Judge.