Bustamante, Judge (specially concurring). {29} I concur in the Majority Opinion and most of its rationale. I agree, for example, that the State should bear the consequences of the remarkably obtuse actions of its investigator in not informing the attorney in the case that the letters he included in the package were not exact duplicates of the letters issued in 2006. The State’s arguments trying to minimize the investigator’s fault for what he did fly in the face of the record and the district court’s finding of fact. {30} I write separately only because the Majority Opinion does not adequately address the State’s argument that dismissal is too harsh a sanction absent a showing of prejudice to Imagine. The Majority Opinion provides a partial response in ¶ 23, citing Medina and Reed for the proposition that actual deception and reliance need not be demonstrated in order to affirm dismissal as a sanction. I agree with the proposition, but the question of prejudice here makes the outcome a close thing and in my view merits more detailed scrutiny. The notions of actual deception and reliance are relevant to the question of prejudice, but do not necessarily displace the concerns inherent in the prejudice analysis. Reed, after all, noted that “[njonetheless, prejudice may be a factor for the district court to consider when evaluating the propriety of dismissal for discovery abuse.” Reed, 2000-NMCA-091, ¶ 28. Reed also noted that “the non-deceiving party must show that the misrepresentations were significant to the discovery process.” Id. ¶ 29. I also believe that consideration of prejudice is the better practice in cases such as this because it prompts a broader review of the circumstances surrounding the events and the district court’s decision. This broader review would be of aid in assessing whether the offending party’s acts suffice to meet the level of extraordinariness we look for when the ultimate sanction of dismissal has been imposed. It would seem particularly appropriate in cases such as this where a single incident led to the sanction. {31} The State relies heavily on criminal cases discussing appropriate considerations for sanctions when the prosecutor has lost, destroyed, or withheld evidence. See State v. Harper, 2011-NMSC-044, ¶ 19, 150 N.M. 745, 266 P.3d 25; State v. Bartlett, 1990-NMCA-024, ¶ 4, 109 N.M. 679, 789 P.2d 627. These cases are not helpful here if only because of the very different considerations inherent in the criminal law. {32} The State also relies on a civil prelitigation spoliation case which makes clear that prejudice to the opposing party should be considered when evaluating whether dismissal as a sanction is warranted. See Rest. Mgmt. Co. v. Kidde-Fenwal, Inc., 1999-NMCA-101, ¶ 13, 127 N.M. 708, 986 P.2d 504. Though this case involved prelitigation destruction of evidence, its analytical framework was grounded in the inherent authority of the courts to regulate their dockets, promote judicial efficiency, and deter frivolous claims. Id. ¶¶ 11, 12. Thus, the rationale underlying the existence and exercise of inherent powers — the necessity to be able to command the obedience of litigants and their attorneys in order to protect the integrity of the litigation process — has been applied to both prelitigation and litigation-based conduct. As such, consideration of prejudice to the non-offending party is also appropriate here. {33} As suggested by Kidde-Fenwal, the State organizes its prejudice argument around the relevance of the evidence to the cause of action in the case and the effect the “created” documents might have on Imagine’s ability to prepare and present its case. Id. ¶ 15. As noted in ¶¶ 2 and 3 of the Majority Opinion, the State and Imagine disagreed about when a caregiver could be hired and paid. The State maintained that caregivers could not be paid until they had cleared their criminal background screening. Imagine asserted that caregivers could be hired and paid pending completion of the screening process. Thus, for the State’s purpose, the most salient information on the falsely reproduced letters was the identity of the caregiver and the date the approved screening issued. There is no issue that these “critical fields” — as the State terms them — were accurate. {34} Based on the fact that the “critical fields” information was accurate, the State argues with some force that there could be no effect on Imagine’s defense in any event. The State also asserts that once the error was discovered it agreed that the false letters would not be used for any purpose; thus there could be no prejudice shown. Viewed in isolation these arguments could be persuasive. {35} But prejudice is not a controlling factor. Courts should also consider the degree of fault of the offending party. Id. ¶ 14. The district court clearly found great fault in the actions of the investigator. Courts should balance the degree of fault against the magnitude of prejudice in designing a sanction. Id. ¶ 17. If the reasonably potential effect of the offending party’s action on the administration of justice is severe enough, the court can opt for the severest sanction to deter such conduct by others in the future. Id. {36} I construe the district court’s decision as a judgment by it that the creation and use made of the false, recreated letters was simply not to be tolerated. Given the “immense power” of the Attorney General and its position as the attorney for the State of New Mexico, I cannot disagree with the district court’s conclusion. I conclude that this is one of those cases in which the degree of fault can fairly trump a showing of relatively minimal prejudice. MICHAEL D. BUSTAMANTE, Judge [[Image here]] [[Image here]]