This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41126**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FRANCIS DAVID FAIR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**David A. Murphy, District Court Judge**

Raúl Torrez, Attorney General
Serena R. Wheaton, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant Francis Fair appeals his conviction for involuntary manslaughter (firearm enhancement), contrary to NMSA 1978, Section 30-2-3(B) (1994). Defendant argues that the State made "two material misrepresentations" during trial that impacted the defense's ability to cross-examine two prosecution witnesses. Perceiving no reversible error, we affirm.

**BACKGROUND**

**{2}** Defendant was charged and convicted for the shooting death of Roberto Herrera (Victim). The events underlying Defendant's conviction are largely undisputed. On the day of the shooting, Defendant, Victim, and two other friends were together in an upstairs loft drinking alcohol and smoking marijuana. Victim was playing with Defendant's gun. Victim was seen putting bullets in the magazine and taking them out. Witnesses stated that they also saw Defendant handling the gun. No witness testified to seeing exactly how the following events unfolded, but at some point the gun discharged, Victim was shot in the head, and Defendant was standing directly in front of or right next to Victim. Victim died from his injuries.

**{3}** Following an investigation, Defendant was charged with first degree murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994). Before trial, Defendant filed a motion to suppress testimony from Dr. Clarissa Krinsky (the OMI Doctor), about the autopsy performed on Victim. Defendant argued that the OMI Doctor should not be permitted to testify about the decision not to request a toxicology evaluation of Victim because the autopsy had been performed by another doctor, Dr. Karen Kline-Parhomavich, who had subsequently left the state and was unavailable to testify. The district court granted the motion in part and prohibited the OMI Doctor "from testifying as to why Dr. Kline-Parhomavich did not request toxicology results because the testimony would call for speculation and would violate Defendant's confrontation rights."

**{4}** During opening statements at trial, defense counsel framed the case as a product of the government jumping to conclusions and rushing to judgment because of "sloppiness . . . and a lack of a thorough investigation. For instance, the government never request[ed] or conduct[ed] a toxicology screen to see how much alcohol or drugs were in [Victim]'s system." The State objected at that point and during the ensuing bench conference, the prosecutor stated that a toxicology screening *had* been performed on Victim and turned over to defense counsel. Defense counsel said that the parties could figure this out later, outside the presence of the jury, and continued with his opening statement. After the State rested, the prosecutor sought to correct the record and disclosed that a toxicology report had not been done on Victim. Defense counsel moved for a mistrial on the basis that the defense had intended to argue that the failure to request a toxicology screening was part of the problem with the investigation in this case, but the defense had not pursued any questioning on the subject in reliance on the State's representation that a screening had been done on Victim. The district court denied Defendant's motion.

**{5}** A second issue arose concerning the district court's ruling that the defense could not cross-examine the lead detective regarding two pending lawsuits or an internal affairs investigation. The State had filed a pretrial motion in limine arguing that it would be improper to allow Defendant to impeach the detective with the pending civil suits in an effort to challenge his investigation in this case. The district court heard the motion during trial and the prosecutor clarified that it was also asking the court to prevent defense counsel from questioning the detective about an internal affairs investigation, emphasizing that there had been no finding of dishonesty with respect to the internal affairs investigation. Defense counsel argued that the detective had received a thirty-six

hour suspension, to which the State responded that the disciplinary determination had later been reversed by the Albuquerque Police Department. The district court ruled that cross-examination would not be allowed on these matters because they were pending and there had been nothing definitive offered to show that the officer acted in a dishonest way. After the State rested later that day, the prosecutor clarified that the detective's suspension had not yet been reversed but an offer had been made to do so and the matter was currently in arbitration. It does not appear that Defendant sought or the district court granted any relief with respect to this clarification.

**{6}** Defendant was convicted of involuntary manslaughter and now appeals.

**DISCUSSION**

**I. Toxicology Screening**

**{7}** Defendant argues that the district court erred in denying his request for a mistrial because, as we understand his argument, the State's misstatement regarding the toxicology report resulted in a Confrontation Clause violation and prevented him from presenting a defense. Specifically, Defendant argues that the misstatement prevented him from cross-examining the OMI Doctor about the lack of a toxicology report, which in turn prevented him from establishing that the State's investigation was deficient because it overlooked the possibility that Victim's death was an accident.

**{8}** We review the district court's denial of a motion for mistrial for an abuse of discretion. *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016. "The district court abuses its discretion in ruling on a motion for mistrial if it acts in an obviously erroneous, arbitrary, or unwarranted manner, or when the decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* (internal quotation marks and citations omitted); *see also State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 ("An isolated, minor impropriety ordinarily is not sufficient to warrant reversal because a fair trial is not necessarily a perfect one." (internal quotation marks and citation omitted)).

**{9}** We initially reject Defendant's premise that he was denied the ability to cross-examine the OMI Doctor. Defendant argues that he "[took] the State at its word" and did not examine the OMI Doctor about the toxicology report based on the State's representation that a screening had been performed on Victim. While there is no doubt that the prosecution was in the wrong both in objecting during opening and waiting until the third day of trial to correct the record, it nevertheless appears that Defendant was armed with sufficient information to meet the State's objection and was not prevented from questioning the OMI Doctor during trial. Defendant *was* able to cross-examine the OMI Doctor at trial, and the district court never issued a ruling that prevented him from asking the OMI Doctor about whether the toxicology screening was completed. Likewise, to the extent Defendant argues he was dissuaded from pursuing this line of questioning based on the prosecutor's misstatement, we observe that Defendant filed a pretrial motion in limine on this very subject, indicating that Defendant knew or should

have known that a toxicology screening had not, in fact, been performed on Victim. Therefore, despite the problems caused by the prosecutor's mistaken objection, we cannot agree that Defendant was unduly restricted in his cross-examination.

**{10}**     Substantively, we are similarly unpersuaded that the State's error foreclosed an avenue of defense. Defendant asserts that additional cross-examination of the OMI Doctor regarding the lack of a toxicology report "would have allowed the defense to further demonstrate to the jury that the investigation into whether the death in this case was an accident, a murder or somewhere in-between was lacking." However, Defendant has not demonstrated why a toxicology screening on *Victim* was relevant or how the lack of such a screening is probative of a deficient investigation.

**{11}**     Defendant has likewise failed to explain how or why a toxicology screening on Victim is relevant to the categorization of the homicide as a murder or an accident. The unstated implication is that Victim's impairment somehow contributed to his death, though Defendant has not explained how or why this is the case.[1] Even if we accept that Victim's impairment was in some way relevant to the homicide charge, we observe that even without a toxicology screening, the jury heard testimony regarding Victim's impairment from several witnesses at trial. For example, one witness testified that the group, including Victim, had been smoking marijuana all day and drinking alcohol prior to the incident. Another witness confirmed that Victim smoked marijuana on that day. Yet another witness testified that Victim, along with Defendant and another witness, was smoking and drinking prior to the incident, and that Victim was "buzzed" at that time, meaning "impaired by alcohol and marijuana." In light of this testimony, it appears that a positive toxicology screening would merely be cumulative on the question of whether Victim was impaired and would, at best, serve only to quantify Victim's level of impairment. *See State v. Johnson*, 2004-NMSC-029, ¶ 38, 136 N.M. 348, 98 P.3d 998 (defining cumulative evidence as "additional evidence of the same kind tending to prove the same point as other evidence already given" (internal quotation marks and citation omitted)).

**{12}**     For these reasons, we conclude Defendant has not demonstrated an abuse of discretion on the part of the district court in denying his motion for a mistrial. We see no indication that Defendant was meaningfully prevented from cross-examining the OMI Doctor, and Defendant has not demonstrated either that the lack of a toxicology screening on Victim was probative of a deficient investigation or that it prevented Defendant from presenting his theory that Victim's death was an accident. We hold that the district court did not err in denying Defendant's motion for a mistrial.

## II.     Evidentiary Ruling Excluding Pending Investigations

**{13}**     As we understand his second argument, Defendant contends that the district court erred in limiting the scope of his cross-examination of the lead detective by prohibiting questions regarding pending lawsuits and disciplinary proceedings.

---

[1]Defendant argued in various pretrial matters that Victim may have intentionally shot himself. However, Defendant did not clearly advance this argument at trial, instead referring to the shooting as an "accident."

Defendant asserts that these proceedings involved a finding of dishonesty or discipline against the detective for not conducting a thorough investigation, which are legitimate sources of cross-examination and impeachment under Rule 11-608(B)(1) NMRA (stating that a trial court "may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness of the witness"). *See also State v. Lymon*, 2021-NMSC-021, ¶ 47, 488 P.3d 610 ("[U]nder Rule 11-608(B), a trial court may allow on cross-examination inquiry into specific instances of a witness's prior conduct if the specific instances are probative of the witness's character for truthfulness.").

**{14}**    We reject Defendant's assertion that the district court's ruling amounts to a Confrontation Clause violation and employ our traditional abuse of discretion standard to review the district court's evidentiary ruling. *See State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829. We cannot conclude that "the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). Absent a clear abuse of discretion, we will not reverse the ruling below. *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

**{15}**    The district court based its decision to prohibit cross-examination regarding lawsuits and disciplinary proceedings on the fact that the matters were pending and there had been no definitive finding that the officer had acted in a dishonest way. Defendant argues that "whether there are pending lawsuits is not a consideration under [Rule 11-608(B)]," and therefore, the district court's ruling was based on a misapprehension of the law. The State responds that the district court was correct in its decision to disallow cross-examination based on unsubstantiated allegations of misconduct, noting that our Supreme Court has cautioned trial courts to "take care to distinguish actual misconduct from a mere accusation of misconduct." *See State v. Robinson*, 1983-NMSC-040, ¶ 5, 99 N.M. 674, 662 P.2d 1341. The *Robinson* Court recognized that "impeachment of a witness by insinuations based on unsubstantiated allegations of prior misconduct provides the trier of fact with no information relevant to the witness's credibility and carries a great potential for prejudice." *Id.* ¶ 7. In light of *Robinson*, we perceive no abuse of discretion in the district court's decision to prohibit questioning regarding pending lawsuits or disciplinary proceedings. *See also State v. Torres*, 2018-NMSC-013, ¶ 58, 413 P.3d 467 (observing that the focus of Rule 11-608(B) is whether the specific instances of conduct at issue "[are probative of the] witness's character for truthfulness," and that Rule 11-608(B) is "permissive, not mandatory"); *Segura v. K-Mart Corp.*, 2003-NMCA-013, ¶ 28, 133 N.M. 192, 62 P.3d 283 (observing that under Rule 11-608, "even though such evidence may be relevant, its admissibility is left to the sound discretion of the trial court").

**{16}**    Defendant argues in his reply brief that the disciplinary proceedings were not merely unsubstantiated allegations—they were a final decision ripe for impeachment. During the hearing on the State's motion, Defendant argued that the appeal of the detective's suspension had been denied. The State claimed that the detective's suspension had been reversed. The prosecutor later clarified that the disciplinary

proceedings had not been reversed, but were in arbitration and that the city had offered to rescind the detective's suspension with back pay. Defendant argues that in light of the prosecutor's clarification, it appears the underlying disciplinary proceedings were final, and the prosecutor's mistake was prejudicial because "the district court did not allow the defense to cross-examine [the detective] about a finding of dishonesty or about discipline he received for not conducting a thorough investigation under Rule 11-608(B), in part because the State misrepresented that it was not a final decision."

**{17}** Even if we accept Defendant's position that the disciplinary proceedings were final—a view we do not necessarily endorse given the pending arbitration—the district court based its ruling on the fact that Defendant had not offered evidence to establish that the disciplinary proceedings involved an adjudication or determination of dishonesty. The prosecutor's clarification had no impact on this aspect of the district court's ruling, and Defendant has not demonstrated that the district court erred in limiting cross-examination regarding the disciplinary proceedings on that basis. Consequently, as with the pending lawsuits, we perceive no error in the district court's determination that the detective should not be subject to cross-examination on the matters at issue.

**CONCLUSION**

**{18}** For the above and foregoing reasons, we affirm.

**{19}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KRISTINA BOGARDUS, Judge**