*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AHTNA, INC., | ) | |
| | ) | Supreme Court No. S-14075 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-08-01602 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF | ) | No. 6745 – January 18, 2013 |
| TRANSPORTATION & PUBLIC | ) | |
| FACILITIES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances:  Howard S. Trickey and Gregory F. Dorrington, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellant.  M. Leone Hatch, Assistant Attorney General, Fairbanks, and John J. Burns, Attorney General, Juneau, for Appellee.

Before:  Carpeneti, Chief Justice, Winfree and Stowers, Justices. [Fabe, Justice, not participating.]

STOWERS, Justice.

## I.    INTRODUCTION

In September 1961, the U.S. Bureau of Land Management (BLM) issued a right-of-way grant to the Alaska Department of Public Works (now the Department of Transportation and Public Facilities) conveying a "road building material site" along the Denali Highway with no expiration date and no rental fee.  The right-of-way grant was issued pursuant to federal statutes and subject to relevant federal highway regulations.

After the Alaska Native Claims Settlement Act (ANCSA) was enacted in 1971,[1] the United States conveyed the surface and subsurface estates encompassing the State's material site to Ahtna, Inc. (Ahtna), an Alaska Regional Native Corporation created pursuant to ANCSA.  The conveyance was "subject to" the "[r]ights-of-way for Federal Aid material sites."

Section 14(g) of ANCSA[2] allowed the federal government to waive administration of the rights-of-way, which BLM did in 1984.  The BLM waiver stated that the State was the grantee of the right-of-way at issue, and instead of providing an expiration date the waiver described the term of duration of the right-of-way as "[p]erpetual."  The waiver entitled Ahtna to "any and all interests previously held by the United States as grantor," but the waiver explicitly stated there were no rental or other revenues associated with the right-of-way.  The State removed material from the site until 1988, but the State did not use material from the site for the next 20 years. The State began using the site again in 2008.

---

[1]    Pub. L. No. 92-203, 85 Stat. 688 (1971) (codified at 43 U.S.C. §§ 1601-1629h (2006)).

[2]    *Id.*, § 14(g), 85 Stat. at 704 (codified at 43 U.S.C. § 1613(g)).

Ahtna demanded compensation for the removal of gravel from the material site and directed the State to cease and desist further entry onto Ahtna lands. The State responded that its right to remove the gravel pre-existed Ahtna's title interest.

The State filed suit against Ahtna, and the parties filed cross-motions for summary judgment. The superior court granted summary judgment to the State, concluding that the State had a valid interest in the material site right-of-way under the Federal-Aid Highway Act, and that Ahtna could not cancel the right-of-way for nonuse or abandonment so long as the State operated and maintained the Denali Highway. Ahtna appeals.

We affirm the superior court's grant of summary judgment to the State.

## II.    FACTS AND PROCEEDINGS

### A.    The State's Material Site Right-Of-Way

On June 6, 1960, the Department of Public Works submitted an application to BLM for a material site easement at milepost 118.5 of the Denali Highway near Cantwell. The State intended to use the 14-acre site to obtain gravel for highway construction. On September 26, 1961, BLM approved the application and granted the State a right-of-way. The grant, F-026069, listed the permitted use for the right-of-way as "[r]oad building material site," listed the expiration date as "[n]one," and listed the rental amount as "[n]one." The grant's map was labeled "material site easement." The BLM decision granting the right-of-way indicated it was issued pursuant to "Section 17

of the Federal Highway Act of November 9, 1921 (42 Stat. 216; 23 U.S.C. 18)"[3] and subject to specified federal regulations.

## B.    BLM Waives Administration Of The Material Site.

ANCSA was enacted on December 18, 1971.[4]  Ahtna is one of the 13 Alaska Native Regional Corporations organized under the terms of ANCSA.  Pursuant to ANCSA, on October 23, 1981, the United States conveyed the surface and subsurface estates encompassing certain of the State's material site rights-of-way to Ahtna through Interim Conveyance 443 (I.C. 443).  This conveyance stated that it was "subject to" the "[r]ights-of-way for Federal Aid material sites" and specifically listed F-026069 as one of these rights-of-way.  There are at least 61 state material sites on Ahtna's land including F- 026069.

---

[3]    42 Stat. 212 (1921) provides that the Act may be cited as the "Federal Highway Act."  We have previously referred to the Act as the "Federal-Aid Highway Act" in *Tetlin Native Corporation v. State*, 759 P.2d 528 (Alaska 1988), where we addressed a similar material site easement granted under the Act, but under a different federal regulation than that which is at issue in this case, as we discuss later in this opinion.  We explained in *Tetlin* that "[s]hortly after statehood the State of Alaska . . . proceeded to obtain interests to material site easements or rights-of-way across land held by the United States government.  The material site easements are a source of sand and gravel for highway construction and maintenance." *Id*. at 530.  We also noted that "[t]he Federal-Aid Highway Act of 1921 was repealed by the Highway Act of August 27, 1958, Pub. L. No. 85-767, 72 Stat. 919.  However § 17 of the 1921 Act was replaced with a near verbatim provision in the 1958 Act, 23 U.S.C. § 317 (1982)." *Id*. at 530 n. 2.  The parties and the superior court in this case also used the term "Federal-Aid Highway Act," and for purposes of consistency, we use that term in this opinion as well.

[4]    Pub. L. No. 92-203, 85 Stat. 688 (1971) (codified at 43 U.S.C. §§ 1601-1629h (2006)).

Section 14(g) of ANCSA addresses the preservation of existing rights on lands conveyed to an Alaska Native Corporation and waiver of federal government administration. It states in part:

> All conveyances made pursuant to this chapter shall be subject to valid existing rights. Where, prior to patent of any land or minerals under this chapter, a[n] easement . . . has been issued for the surface or minerals covered under such patent, the patent shall contain provisions making it subject to the . . . easement, and the right of the . . . grantee to the complete enjoyment of all rights, privileges, and benefits thereby granted to him. Upon issuance of the patent, the patentee shall succeed and become entitled to any and all interests of the State or the United States as . . . grantor, in any such . . . easements covering the estate patented . . . . The administration of such . . . easement shall continue to be by the State or the United States, unless the agency responsible for administration waives administration.[5]

When implementing Section 14(g) of ANCSA, the United States Department of the Interior promulgated a regulation making waiver of administration mandatory when the material site was entirely within the conveyance:

> Leases, contracts, permits, rights-of-way, or easements granted prior to the issuance of any conveyance under this authority shall continue to be administered by the State of Alaska or by the United States after the conveyance has been issued, unless the responsible agency waives administration. Where the responsible agency is an agency of the Department of the Interior, administration shall be waived when the conveyance covers all the land embraced within a lease, contract, permit, right-of-way, or easement, unless there is a finding by the Secretary that the interest of the United States

---

5    Pub. L. No. 92-203, § 14(g), 85 Stat. at 704 (codified at 43 U.S.C. § 1613(g)).

requires continuation of the administration by the United States.[6]

BLM waived its administration of all of the rights-of-way contained in I.C. 443, including material site F-026069, on September 6, 1984. The waiver reiterated that I.C. 443 was "subject to" rights-of-way that had been granted to the State of Alaska. The waiver did not provide an expiration date, instead describing the rights-of-way as "[p]erpetual." The waiver also stated:

> Pursuant to law, the grantee is entitled to all rights, privileges, and benefits granted by the terms of the grants during the term of the grants until they expire, are relinquished, or are modified by mutual consent of Ahtna, Incorporated and the State of Alaska, Department of Transportation and Public Facilities.

> Ahtna, Incorporated is entitled to any and all interests previously held by the United States as grantor in any such grants within the conveyance boundaries.

> There are no rental, or other revenues associated with these rights-of-ways.

The State appealed BLM's waiver decision to the Interior Board of Land Appeals (IBLA), arguing that BLM's waiver of its administration of these rights-of-way did not transfer administration of the rights-of-way to the Native Corporation. However, in *State of Alaska I*, the IBLA panel majority held that even though the words "transfer" or "assign" do not appear in Section 14(g) of ANCSA or the implementing regulations, the "effect of such a waiver is to accomplish a transfer of [administration of outstanding rights-of-way] to the Native corporation to which the land has been conveyed."[7] The IBLA stated, "If [the United States] elects to waive its right of administration, that

---

6    43 C.F.R. § 2650.4-3 (1973).

7    *State of Alaska*, 86 IBLA 268, 271 (May 10, 1985) (*State of Alaska I*).

function must naturally flow to, and be reposed in the owner of the land.  There can be no other logical consequence."[8]  The IBLA further explained:

> [S]uch waiver and resultant transfer have not in any case impaired or diminished the State's "complete enjoyment" of its legal rights under the lease or right-of-way held by it. It still enjoys the same right to use the same land in the same manner under the same terms and conditions as before.[9]

Administrative Law Judge Franklin D. Arness issued a vigorous dissent to this opinion.  Judge Arness argued there was "no authority" for the majority's holding that the waiver of administration by BLM "automatically results in a transfer of administration of an affected lease or right-of-way to the Native corporation which has been granted the servient estate."[10]  Judge Arness asserted that because the rights-of-way at issue were created pursuant to the Federal-Aid Highway Act, that statute's framework for administering the rights-of-way applied.[11]  Under the Act, the Secretary of Transportation determined what lands may be appropriated as rights-of-way and material sites, and filed a map identifying those lands with "the Secretary of the Department supervising the administration of such lands or interests in lands" (in this case the Department of the Interior).[12]  The administering Secretary in turn had to affirmatively

---

[8]    *Id*. at 272.

[9]    *Id*.

[10]   *Id*. at 275 (Arness, ALJ, dissenting).

[11]   *Id*. at 276 (discussing 23 U.S.C. § 317 (1982)).

[12]   23 U.S.C. § 317 (1982).

reject the map, or else the Secretary of Transportation could transfer that land to the State highway department.[13] Further, 23 U.S.C. § 317(c) states:

> If at any time the need for any such lands or materials for such purposes shall no longer exist, notice of the fact shall be given by the State highway department to the Secretary [of Transportation] and such lands or materials shall immediately revert to the control of the Secretary of the Department from which they had been appropriated [here, the Department of the Interior].

Thus, Judge Arness concluded that the Secretary of Transportation has "primary control" over the rights-of-way until the State notifies the Secretary that it intends to terminate the

---

[13] 23 U.S.C. § 317(a) and (b) (1982) stated:

(a) If the Secretary [of Transportation] determines that any part of the lands or interests in lands owned by the United States is reasonably necessary for the right-of-way of any highway, or as a source of materials for the construction or maintenance of any such highway adjacent to such lands or interests in lands, the Secretary shall file with the Secretary of the Department supervising the administration of such lands or interests in lands a map showing the portion of such lands or interests in lands which it is desired to appropriate.

(b) If within a period of four months after such filing, the Secretary of such Department shall not have certified to the Secretary that the proposed appropriation of such land or material is contrary to the public interest or inconsistent with the purposes for which such land or materials have been reserved, or shall have agreed to the appropriation and transfer under conditions which he deems necessary for the adequate protection and utilization of the reserve, then such land and materials may be appropriated and transferred to the State highway department, or its nominee, for such purposes and subject to the conditions so specified.

grant.[14] Only then, Judge Arness reasoned, would the Secretary of the Interior have the authority to exercise his discretion concerning the continued existence of the grant.[15] The State did not appeal the IBLA decision.

In 1987 the IBLA issued another opinion, *State of Alaska II*, holding that waiver of administration of the rights-of-ways "shift[s] the forum for resolution of the propriety of action taken in the administration of the right-of-way from Federal to State court and bypass[es] the intermediate step of administrative adjudication by the Department [of Interior]."[16] The IBLA also determined that the Native Corporation's role as grantor of the rights-of-way "includ[es] the right to cancel" the grant.[17] The State did not appeal this IBLA decision, either.

C.     Ahnta Attempts To Cancel The State's Material Site Grant.

In 2007 Ahtna and the State began to dispute their respective rights regarding the material sites on Ahtna's land. On March 30, 2007, Ahtna proposed that the State relinquish any claim to the material sites to clear title for Ahtna. Ahtna also asserted that it expected to receive compensation for past removal of material from the material sites and directed the State to cease and desist entering Ahtna's lands without the corporation's written consent. Ahtna wrote another cease-and-desist letter but stated that it would sell material to the State at market rate. The State responded that the public should not be required to pay for a right it already held and which existed before Ahtna's title interest was created.

---

[14]     *State of Alaska I*, 86 IBLA at 276 (Arness, ALJ, dissenting).

[15]     *Id.*

[16]     *State of Alaska*, 97 IBLA 229, 232 (May 11, 1987) (*State of Alaska II*).

[17]     *Id.*

The State hired a third-party contractor to crush gravel from material site F-026069 in early 2008, but Ahtna sought to prevent this work. On April 25, 2008, Ahtna sent an "official notice of cancellation" to the State stating that all material right-of-way grants including F-026069 were "null and void" having "expired and/or been abandoned." The State responded that Ahtna did not have the authority to terminate the State's rights and the State did not recognize the termination. Both parties agree that the State had not used F-026069 for gravel extraction for 20 years, from 1988 to 2008.

### D.    Procedural Background

On April 24, 2008, the State filed a complaint in the superior court against Ahtna to quiet title and for interference with contract. The State requested that the superior court quiet title to F-026069 in favor of the State and enter an injunction directing Ahtna to refrain from interfering with the State's use of the material site. Ahtna filed a counterclaim seeking a judgment declaring the material site right-of-way null and void and quieting title to the subsurface estate in favor of Ahtna.

The parties filed cross-motions for summary judgment; both parties agreed there were no genuine issues of material fact in the case. Superior Court Judge Michael A. MacDonald granted summary judgment to the State concluding: (1) "the State continues to hold a valid interest in Material Source Right-of-Way Grant F-026069 . . . under the Federal-Aid Highway Act;" (2) "Ahtna does not have administrative authority over the grant;" (3) if the State intends to relinquish its interest in F-026069, "the State must affirmatively abandon [its] interest in the grant and therefore Ahtna cannot unilaterally revoke the State's interest;" and (4) "the grant cannot be deemed abandoned so long as the State operates and maintains the Denali Highway." In reaching its conclusion that Ahtna does not have administrative authority over the grant, the superior court agreed with Administrative Law Judge Arness's dissent in the IBLA case *State of Alaska I* that "[t]he BLM waiver amounts to only a giving up of the

administrative authority" but "does not constitute a transfer of that authority to Ahtna." Ahtna appeals the superior court's summary judgment rulings.

## III. STANDARD OF REVIEW

We review grants of summary judgment de novo.[18] We consider "whether any genuine issue of material fact exists and whether on the established facts, the moving party is entitled to judgment as a matter of law."[19]

Because we agree with the parties that the material facts in this case are not in dispute, the issues presented are pure questions of law. We interpret statutes and regulations "according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[20] The law in force at the time the grant was made controls.[21]

## IV. DISCUSSION

**Assuming BLM's Waiver Transferred Administrative Authority To Ahtna, That Authority Did Not Include The Right To Cancel The State's Interest In The Material Site For Nonuse Or Abandonment Without Consent From The State**.

The superior court concluded that "[t]he BLM waiver amounts to only a giving up of the administrative authority. It does not constitute a transfer of that

---

[18]     *Dias v. State, Dep't of Transp. & Pub. Facilities*, 240 P.3d 272, 274 (Alaska 2010).

[19]     *Id.* (quoting *Nielson v. Benton*, 903 P.2d 1079, 1051-52 (Alaska 1995)).

[20]     *See Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345 (Alaska 2011) (quoting *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

[21]     *Myers v. United States*, 378 F.2d 696, 702 (Ct. Cl. 1967) ("In construing the effect of a public grant, it is the established rule that the law in force at the ti[m]e the grant is made governs.").

authority to Ahtna." The superior court explained, "Ahtna did not inherit the power or authority to administer the right-of-way as a quasi-governmental entity."

Ahtna argues that under the doctrine of collateral estoppel, the IBLA decision in *State of Alaska I* precludes the superior court from concluding that BLM's waiver did not transfer administrative authority over the State's material site to Ahtna.

Collateral estoppel "bars the relitigation of issues actually determined in [earlier] proceedings."[22] Collateral estoppel is applicable where:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.[23]

We have recognized:

> Principles of finality may be applied to the decisions of administrative agencies if, after case-specific review, a court finds that the administrative decision resulted from a procedure that seems an adequate substitute for judicial procedure and that it would be fair to accord preclusive effect to the administrative decision.[24]

For purposes of this opinion, we assume that the superior court was bound by the IBLA's determination in *State of Alaska I* under the doctrine of collateral estoppel and that the BLM waiver constituted a transfer of administration and should have been

---

[22] *Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 8 n.11 (Alaska 1979).

[23] *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 152 P.3d 460, 468 (Alaska 2007).

[24] *Id.* (quoting *State, Child Support Enforcement Div. v. Bromley*, 987 P.2d 183, 192 (Alaska 1999)).

given preclusive effect by the superior court. However, even assuming BLM's waiver transferred administrative authority to Ahtna, we hold that authority did not include the power for Ahtna to cancel the right-of-way grant for nonuse or abandonment without the State's consent.[25]

**A.    The plain language of the right-of-way grant and waiver of administration does not authorize Ahtna to cancel the grant for nonuse or abandonment without the State's consent.**

The plain language of the grant and waiver of administration shows that Ahtna has no authority to cancel the grant for nonuse or abandonment without the State's consent. The grant provided that the expiration date was "[n]one." The waiver's language reinforced this when it described the right-of-way's term as "[p]erpetual" and stated, "[T]here are no rental, or other revenues associated with these rights-of-way." Most significantly, the waiver stated:

> Pursuant to law, the grantee is entitled to all rights, privileges, and benefits granted by the terms of the grants during the term of the grants *until they expire, are relinquished, or are modified by mutual consent* of Ahtna, Incorporated and the State of Alaska, Department of Transportation and Public Facilities.

(Emphasis added.) Because the right-of-way does not expire, has not been relinquished by the State, and has not been modified by mutual consent of Ahtna and the State, the grant does not cease to exist by nonuse or abandonment.

---

[25]    Ahtna's briefing argues that Ahtna can "unilaterally cancel" the grant, suggesting Ahtna thought it could cancel the grant without cause. Ahtna clarified in oral argument that it only asserts it has the authority to cancel the grant for nonuse and abandonment without the State's consent.

**B.** **The grant's controlling statutes and regulations do not allow Ahtna to cancel the grant without the State's consent.**

Ahtna also argues the grant is subject to regulations allowing for cancellation without the State's consent. The grant states that it is subject to federal regulation "43 CFR, Part 244, Subparts A and G" as well as "[a]ll regulations" in "[c]ircular numbers 1915, 2001, 2004, [and] 2012." Ahtna asserts that two regulations under 43 C.F.R. Part 244 (1955) (recodified as 43 C.F.R. Group 2800 (1971)), the regulations applicable at the time of the grant, allow cancellation without consent. First, Ahtna argues that 43 C.F.R. § 244.7(a), which would characterize the right-of-way as a revocable permit subject to the discretion of an authorized officer, applies. Second, Ahtna argues that 43 C.F.R. § 244.15(b), which allowed a cancellation of rights-of-way by the authorized officer for abandonment or nonuse, applies.

**1.** **The State has a material site easement, not a revocable permit.**

Ahtna and the State disagree as to what kind of property interest the State possesses. Ahtna asserts that it is a revocable permit while the State asserts it is a right-of-way easement. 43 C.F.R. § 244.7(a) states:

> The interest granted shall consist of an easement, license, or permit in accordance with the terms of the applicable statute; no interest shall be greater than a permit revocable at the discretion of the authorized officer *unless the applicable statute provides otherwise.*

(Emphasis added.) While Ahtna argues that the Federal-Aid Highway Act does not "provide[] otherwise" and therefore the grant is a revocable permit, we disagree. The Act expressly authorized the State to determine when the right-of-way would terminate:

> If at any time the need for any such lands or materials for such purposes shall no longer exist, notice of the fact shall be given by the State highway department to the Secretary [of Transportation] and such lands or materials shall immediately revert to the control of the Secretary of the Department from

which they had been appropriated [here, the Department of the Interior].[26]

This language indicates that the Act provided a specific mechanism for ending the right-of-way under the statute. The statute requires an affirmative act by the State rather than leaving the fate of the right-of-way to the discretion of "the authorized officer."[27]

Further, no document related to the conveyance of the material site characterizes the interest as a revocable permit. Rather, the plain language of the grant and the interim conveyance to Ahtna indicates that the State has a right-of-way easement. The phrase "right-of-way" is used in the title as well as in the text of the grant. The map attached to the grant displaying the right-of-way along the Denali Highway characterizes the right-of-way as a "material site easement." I.C. 443 Paragraph 16 also states that Ahtna's grant of lands is subject to "Rights-of-way for Federal Aid material sites."

Case law also supports the conclusion that the State's interest is a material site easement. In *Southern Idaho Conference Association of Seventh Day Adventists v. United States*, the Ninth Circuit held that a material site "appropriated by the United States through the Department of Interior and transferred to the State of Idaho pursuant to the provisions of 23 U.S.C. § 317" was a material site easement.[28] And in *Tetlin Native Corporation v. State*, we considered a material site granted to the State by the

---

[26]     23 U.S.C. § 317(c) (1958); *see also State of Alaska I*, 86 IBLA 268, 275-76 (May 10, 1985) (Arness, ALJ, dissenting) (citing and discussing 23 U.S.C. § 317(c) (1982)).

[27]     43 C.F.R. § 2557(a) (1955).

[28]     418 F.2d 411, 415 (9th Cir. 1969).

Bureau of Indian Affairs under the Federal-Aid Highway Act to be a "material site easement."[29] Material site F-026069 is a right-of-way easement, not a revocable permit.

### 2. The State's right-of-way grant cannot be canceled for nonuse or abandonment.

Under the terms of the grant, the State's right-of-way is subject to 43 C.F.R. § 244.15(b) (1955), which provided:

> (b) *Nonconstruction, abandonment, or nonuse. Unless otherwise provided by law*, rights-of-way are subject to cancellation by the authorized officer for failure to construct within the period allowed and for abandonment or nonuse.[30]

Ahtna argues that it is the authorized officer,[31] and therefore has "the discretion and authority to cancel the State's interest in the material site for either abandonment *or* nonuse." (Emphasis in original.) The State asserts that Ahtna is not an authorized officer. Whether Ahtna is or is not the authorized officer is irrelevant because this regulation applies "[u]nless otherwise provided by law."[32] The Federal-Aid Highway Act's provision, 23 U.S.C. § 317(c) (1958), as discussed above, "otherwise . . .

---

[29]    759 P.2d 528, 533 (Alaska 1988).

[30]    43 C.F.R. § 244.15(b) (1955) (emphasis added).

[31]    While the term "authorized officer" is not explicitly defined in the Federal-Aid Highway Act, a regulation on the delegation of authority under the Act states:

> The Administrator is authorized to redelegate any power or authority conferred upon him to the Commissioner or to any other official or employee of the Bureau of Public Roads as in his judgment will result in efficiency and economy in the effectuation of the purposes of Federal law and the regulations in this part.

23 C.F.R. § 1.37 (1965).

[32]    43 C.F.R. § 244.15(b).

provide[s]" the exclusive procedure the State must follow to relinquish control of the material site. The Act expressly authorizes the State to determine when to terminate the right-of-way; therefore 43 C.F.R. § 244.15(b) is inapplicable here.

Ahtna also argues that this court has previously held that a Native Corporation has the power to terminate the State's interest in material sites under federal regulations. Ahtna points out that in *Tetlin Native Corporation v. State*, we stated that a Native Corporation "as successor-in-interest to the Federal Government has the power to terminate the material site easements if the State abandons or discontinues the use for which the sites were granted."[33] But the context of the conveyance of the land containing the material site easements to Tetlin Native Corporation was significantly different than the circumstances of the conveyance in this case, and the regulatory authority creating the power to terminate material site easements in *Tetlin* is not the authority governing the material site easement in this case.

In *Tetlin Native Corporation*, the material site easements at issue were located on the Tetlin Native Reserve, land owned by the United States but occupied by the Tetlin Native people.[34] The land was subsequently conveyed to the Tetlin Native Corporation under terms contained in ANCSA; the "Tetlin Native Corporation . . . elected to receive fee simple title to its former reserve and forego participation in the monetary settlement authorized by ANCSA."[35] In this context we said, "Tetlin as successor-in-interest to the Federal Government has the power to terminate the material site easements if the State abandons or discontinues the use for which the sites were

---

[33]     759 P.2d 528, 537 (Alaska 1988).

[34]     *Id*. at 530 and n.4.

[35]     *Id*. at 531.

granted. 25 C.F.R. § 169.20." [36] Our citation to 25 C.F.R. §169.20 is significant. Title 25 C.F.R. § 169.20 by its own terms applies only to "[a]ll rights-of-way granted under the regulations *in this part.*"[37] Part 169 of Title 25 of the Code of Federal Regulations pertains to rights-of-way over Indian lands, like the Tetlin Native Reserve. But Title 25 C.F.R. Part 169 does not apply to the Federal-Aid Highway grant in this case; rather Title 43 C.F.R. Part 244 provides the applicable regulations, and as explained above, because the Federal-Aid Highway Act provides otherwise, even the provisions of 43 C.F.R. § 244.15(b) pertaining to cancellation by nonconstruction, abandonment, and nonuse do not apply. To summarize, the State's right-of-way grant cannot be canceled for nonuse or abandonment because the Federal-Aid Highway Act's provisions preempt the applicability of 43 C.F.R. § 244.15(b), and no other regulation permitting termination for nonuse or abandonment applies.

## VI. CONCLUSION

We AFFIRM the superior court's grant of summary judgment to the State.

---

[36]     *Id*. at 537.

[37]     25 C.F.R. § 169.20 (2012) (emphasis added).